stance, where the coal happened to be here, having been rejected by the original consignee, the coal is shipped from without the state after the contract therefor is made, not in New York, but at the home office. If these facts would take the case from without the operation of the statute, the purpose of the Legislature in enacting the law would be thwarted. The plaintiff had the benefit of conducting its business, so far as the public is concerned, precisely as if Olcott was in fact its salaried manager and authorized to close contracts.

· For these reasons I think the judgment should be reversed, and complaint dismissed.

(92 App. Div. 23.)

## VAN AKIN v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. March 18, 1904.)

1. CARRIERS—INJURY TO FREIGHT—LIMITATION OF LIABILITY.

Certain freight was shipped under a bill of lading exempting a railroad from liability for loss by fire, and was destroyed in the freighthouse of the company. There was no evidence that the fire was the result of any negligence on the part of the company. *Held*, that the owner of the freight could not recover.

2. SAME—NEGLIGENCE.

That freight was destroyed by fire while in the freighthouse of a railroad company does not of itself justify an inference of negligence on the part of the company.

Appeal from Orange County Court.

Action by Samuel L. Van Akin against the Erie Railroad Company. From a judgment of the County Court reversing a judgment of the justice in favor of the plaintiff, he appeals. Affirmed.

The following is the opinion of the court below (Beattie, J.):

The respondent seeks to sustain the judgment appealed from upon the ground that the defendant was negligent in having a dog in the freighthouse, which, it is claimed, must have escaped from the crate or box in which it was shipped, and, upsetting the lamp or lamps in the freighthouse, caused the fire which destroyed the goods belonging to the respondent. The undisputed facts are that the freight which was destroyed reached the station of Lackawaxen at 11:25 p. m., and was put in the freighthouse. At 1:09 a. m. the dog arrived, and was also put in the freighthouse. The freighthouse was lighted by two kerosene lamps placed upon a table in the center of the freightroom, and had been used in that way for about 18 years. Within half an hour after the dog arrived, he gnawed his way out of the crate in which he was confined. He was put back in the crate, with the broken slats against the floor, and two packages, weighing together about 50 pounds, were placed on top to prevent the upsetting of the crate. So far as the proof shows, the dog was not seen again, and there is no evidence that he again escaped from the crate. At 3:40 a. m. the fire was discovered. The witness testified that it was in the upper end of the depot, the entire building ablaze, and that he could not extinguish anything. The witness who testified was employed and working about the depot, handling freight, baggage, and express shipments. There was no evidence that it was his duty to remain at the freight station all that time, and prior to the fire he had been away from the building about 40 minutes.

Upon this proof, it was wholly uncertain to what cause the fire was attributable. The dog came as freight, and was therefore properly put in the freighthouse. Upon its escape, it was again carefully confined, and, so far as the proof shows, did not again escape. Assuming that it did, there is no evidence

that it upset the lamps or that the fire originated from the upsetting of the lamps. As was said in Whitworth v. Erie Railway Co., 87 N. Y. 419: "The bills of lading contain a general exemption from liability for loss by fire, and, the loss having occurred from this cause, it was incumbent on the plaintiff, in order to avoid the effect of the exemption, to show that the fire was the result of the defendant's negligence, or that the loss resulted from some breach of the defendant's duty. The burden was upon the plaintiff to show facts taking the case out of the operation of the exemption clause. * * * Accidental fires, occurring without negligence, are frequent. The occurrence of a fire does not alone justify the inference of negligence." It is apparent that, as was said in Seifter v. Brooklyn Heights R. R. Co., 169 N. Y. 254, 62 N. E. 349, "the plaintiff's superstructure of speculation and fact combined is therefore without any foundation to rest upon, and it must fall."

The judgment must be reversed, with costs.

Argued before HIRSCHBERG, P. J., and GOODRICH, BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Joseph Rosch, Jr., for appellant.
Philip A. Rorty, for respondent.

PER CURIAM. Judgment of the County Court of Orange county affirmed, with costs, on the opinion of the county judge.